## Unger v. Walter Fisher Co.*

(Division A. March 30, 1925.)

[103 So. 348. No. 24749.]

1. Partnership. *Under evidence, no holding out of person as partner, relative to liability to third person.*

   In view of circumstances and matters in evidence, *held*, that by orders signed, "So. Side Grocery Co., by J.," asking plaintiff wholesale company, to which they were addressed, to let plantation hands have certain articles, J. did not hold himself out as a partner in the grocery company, and could not have been understood by plaintiff as doing so, relative to liability on the grocery company's account with plaintiff.

2. Partnership. *For one not a partner to be liable as such he must have held himself out as partner.*

   For one not a partner to be liable as such to a third person, there must have been a holding out by him that he was a partner by word or deed or acquiescence in the act or representation of another.

---

*Headnotes 1. Partnership, 30 Cyc., p. 392; 2. Partnership, 30 Cyc., p. 385.

APPEAL from circuit court of Clay county.

HON. J. I. STURDIVANT, Judge.

Action by the Walter Fisher Company against J. P. Unger and another. From judgment for plaintiff, the named defendant appeals. Reversed and rendered.

*McIntyre & Roberds,* for appellant.

Did the giving of the orders by appellant impose upon him liability to the plaintiff as a partner in the South Side, Grocery Company? The question here is whether the giving of these orders, under the circumstances set forth in this record, are such acts as impose upon appellant, in favor of the plaintiff, liability for all of the goods and merchandise purchased from appellee by the South Side Grocery Company.

The doctrine is based upon estoppel. The rule is stated in different language in the various cases, but we believe the authorities justify the following deductions as being essential to estop one from denying the partnership liability: (1) The holding out as a partner by the partner to be charged, or with his knowledge; (2) This holding out must come to the knowledge of the creditor who extended the credit; (3) There must be a belief on the part of the creditor that the debtor is a partner; (4) The creditor must make reasonable investigation to ascertain the truth; (5) The credit must be extended on that belief. See Note 10 Am. & Eng. Ann. Cas. 132; *Marble* v. *Lypes* (Ala.), 2 So. 701; *Knard et al.* v. *Hill* (Ala.) 15 So. 345, 30 Cyc. 391.; *Gulf & S. I. R. R. Co.* v. *Hunter* (La.) 98 So. 163; *Morgan* v. *Farrel* (Conn.), 18 Am. St. R. 287; 22 Am. & Eng. Ency. L. 54; *Yarbrough et al.* v. *Donoghue et al.* (Miss.), 99 So. 380; *Wise et al.* v. *Cobb et al.* (Miss.), 100 So. 189; *Stubblefield* v. *Roper et al.* (Miss.), 101 So. 852; *Macy* v. *Combs* (Ind.), 77 Am. Dec. 103.

Certainly merely signing the name, South Side Grocery Company, would convey as much, or more, the idea of

power and agency to sign than that of partnership. So that the language of the court in the Weil case is especially applicable to the act in this case constituting the basis of the claim of appellee against appellant.

Each case must stand upon its own facts. Most cases of estoppel arise where retiring partner fails to give notice of his retirement, and persons deal with the firm believing him yet a member. 22 Am. & Eng. Ency. L. 54. The burden of proof was upon plaintiff in the lower court, appellee here., 20 R. C. L. 849. The name of one upon partnership stationery is not sufficient to estop one denying that relation. *Barklay* v. *Beckwith,* 86 N. Y. Supp. 128. The mere fact that one or two persons charged as co-partners did business under the style of B. & Co. does not of itself show the existence of a partnership. *Munton* v. *Rutherford* (Mich.), 80 N. W. 112.

In the case at bar appellant had nothing to do with the operation of the business; was not in and about the business even. Did not live or do business near the place of business, and no officer or employee of appellee ever saw him at the place of business. There was not even an apparent connection, or one single solitary act, connection, or word as to the management, operation, control, ownership over, or interest in, the South Side Grocery Company by J. P. Unger to lead appellee to believe he was a partner in that business.

On this phase, we therefore say the undisputed proof is utterly insufficient, under the rules of law, to make appellee responsible for the account of the South Side Grocery Company.

*McClellan & Tubb,* for appellee.

Counsel in their brief-state that the only ground on which appellee can recover from appellant is upon the doctrine of holding out which is based on estoppel. The cases cited by counsel for appellant in their brief do not bear out counsel's contention or deduction that a creditor

must make reasonable investigation to ascertain the truth. The following cases do not mention this element at all: *Marble* v. *Lypes* (Ala.), 2 So. 701; *Knard* v. *Hill* (Ala.), 15 So. 345; *Wise* v. *Cobb,* 100 So. 189; *Stubblefield* v. *Roper,* 101 So. 852; *Macey* v. *Combs,* 77 Am. Dec. 103.

The first case cited by learned counsel is note 10 Am. & Eng. Ann. Cases, 132. That part of the opinion of the court in this case with reference to due diligence is mere *dicta,* having been a point raised by the defendant—appellee and the case having been reversed on another point raised by the plaintiff—appellant. The note under this case recites the following rule:

"The better rule and the one recognized and invoked by the later decisions, is that a person who holds himself out or knowingly permits himself to be held out as a member of a partnership is not estopped to deny the partnership as against third persons who have dealt with the partnership or alleged firm, unless such person had knowledge of the holding out and relied thereon and were thereby misled to their injury."

This note cites a multitude of cases from the following jurisdictions upholding the rule above set out: England, Canada, United States supreme court, Alabama, Arkansas, California, Colorado, District of Columbia, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Maryland, Maine, Massachusetts, Michigan, Minnesota, Missouri, Montana, New Hampshire, New Jersey, New York, Ohio, Oregon, Pennsylvania, Tennessee, Texas, Vermont, Virginia, Washington and West Virginia. Under this same note below the heading of "applications of and exceptions to the rule" there appears:

"It has been held that if a creditor of a partnership sets up an estoppel by conduct against an alleged partner he must show that he exercises due diligence and good faith to ascertain the true relation of the parties." Citing *Morgan* v. *Terrell,* 58 Conn. 413, 18 Am. St. Rep. 287.

Learned counsel dwelt at length on the case of *Morgan* v. *Terrell,* cited *supra,* in an endeavor to establish

the rule of due diligence in this state—contrary to the great weight of authority. In *Weil Bros.* v. *Hanks* (Ala.), 77 So. 333, the court adheres to the general rule of a partner being liable on the principle of estoppel.

We could cite to the court innumerable authorities holding our view of the law in this case but will conclude by referring the court to the exhaustive notes found in 18 L. R. A. (N. S.) beginning at pages 985 to 992 and to 20 R. C. L. 1067, et seq.

We submit that the question as to whether the acts, conduct and representations of J. P. Unger as shown in the evidence in this case was such a holding out as to estop him from denying the partnership liability or not is a question of fact for the jury and also whether or not the Walter Fisher Company had knowledge of these acts, conduct and representations and extended credit on the faith and belief that J. P. Unger was a partner. *Morgan* v. *Terrell,* cited *supra,* 18 Am. St. Rep. 287; *Weil* v. *Hanks,* cited *supra,* 77 So. 334; notes to *Hahlo* v. *Myer,* 22 Am. St. R. 761; *Thompson* v. *Bank* cited *supra,* 111 U. S. 537; 17 Am. & Eng. Ency. L. 882; Fletcher Pullen and note 14 Am. St. Rep. 355.

Argued orally by *A. J. McIntyre,* for appellant, and *T. J. Tubb,* for appellee.

McGOWEN, J., delivered the opinion of the court.

Declaration on open account filed by the Walter Fisher Company, in the circuit court, against the South Side Grocery Company, suing J. P. and O. S. Unger for the amount of the balance of the annexed itemized account, one thousand two hundred two dollars and eighty-four cents, and charging that J. P. Unger and O. S. Unger operated the South Side Grocery Company as partners. An amended declaration was filed later seeking to recover one thousand one hundred ninety-two dollars and thirty-six cents. The defendants filed

a counter-affidavit denying the correctness of the account, a plea of general issue, and a denial of partnership. There was a verdict by the jury and judgment thereon against both J. P. and O. S. Unger for the sum of five hundred eighty-six dollars and eighteen cents, and J. P. Unger appeals from that judgment.

In order to prevent confusion of names, we will hereafter refer to J. P. Unger as "Jim" Unger and O. S. Unger as "Sim" Unger.

The following essential facts are gleaned from the record:

There is no contention that Jim Unger, as a matter of fact, was a partner in the South Side Grocery Company; the court below so correctly found, and, accordingly, instructed the jury. If liable at all, it is because the proof shows that he held himself out as a partner with his brother in the South Side Grocery Company.

The only proof in the record connecting him with the South Side Grocery Company are eight written orders to the same tenor in effect, written by Jim Unger, directing that they furnish articles necessary for a plantation to hands named therein. The first order in the record is as follows:

"5/5/17.

"Walter Fisher Co.: Please let Jake Mabee have thirty lb. meat if you have it, six bu. standard meal. The negro lost his order and this is a second one, so if another turns up don't fill it.

"So. SIDE GROCERY Co.

"By J. P. UNGER."

The last one is dated December 22, 1922, and is signed South Side Grocery Company, by J. P. Unger. Other similar orders, many in number, had been misplaced or lost.

The record shows that more than two years before the date of this order the South Side Grocery Company had commenced doing business with the Walter Fisher Company; the South Side Grocery being a retail grocery

store in West Point, Miss., operated exclusively by Sim Unger and his wife.

The record does not show that at any time or place or to any person that "Jim" Unger or any one connected with the South Side Grocery Company had ever made any verbal or written representation that he was connected with it or his brother as a partner in the South Side Grocery Company, and the only testimony to be relied on for the plaintiff consists of these other lost orders, together with a statement of the manager of the firm, Mr. Fisher, that he had never had any conversation with "Jim" Unger, but that he considered "Jim" Unger as a member of the partnership conducting the South Side Grocery Company.

There was an effort to show that the brothers were connected together in some way in the cotton business in another part of the town; but in our opinion that wholly failed, and would have no bearing upon the partnership contended for here with reference to the grocery business.

Jim Unger and Sim Unger testified that Jim Unger had no interest in the South Side Grocery Company; that they arranged between themselves that Jim Unger might purchase groceries from the wholesale grocery company to furnish his plantation in the country, and that they would be charged to the South Side Grocery Company, and that Jim Unger would settle monthly with Sim Unger. It is also clear that the shipping clerk, or salesman, of the wholesale company, when Jim Unger first began to trade in this fashion, telephoned Sim Unger and was told that it was all right and to charge whatever Jim wanted to the South Side Grocery Company.

It is shown that, according to the custom of plantation owners, orders were sent for articles usually purchased by a plantation owner for his hands, and delivered by the grocery company to the hands at the store. It was shown that articles bought for the store by Sim Unger were delivered by the wholesale grocery company, the

Walter Fisher Company, to the South Side Grocery Company, by means of their delivery wagon. It is shown that on one occasion the son of Jim Unger bought and had charged a tire for an automobile. It is shown that some articles were purchased by telephone order by the wife of Jim Unger.

Walter Fisher said "he knew that Jim Unger 'belonged' to the South Side Grocery Company," but we are unable to find anything else in the record except these orders and this course of dealing to indicate the basis upon which Fisher acquired his knowledge or claimed to act. As we have before stated, the brothers denied that any partnership existed.

No bill was ever presented to Jim Unger, although in 1920 the South Side Grocery Company was in arrears. Jim Unger was never called upon to make any payment, nor did the Walter Fisher Company ever demand from him, so long as the South Side Grocery Company was a going concern, any part of this account.

We unhesitatingly believe that these orders in this record only constitute the basis of an agency on the part of Jim Unger to make these purchases, and if there were any doubt about this conclusion, the letter written by the Walter Fisher Company to O. S. Unger on December 6, 1920, confirms us in our belief that Jim Unger never did anything or said anything to warrant the conclusion that the Walter Fisher Company were misled by his action in the slightest degree. We set that letter out here:

"West Point, Miss., Dec. 6, 1920.

"Mr. O. S. Unger, City—Dear Sir: You owe us an old account which is very much past due, and you have not been reducing this. We will have to insist that you make some arrangements to settle this matter as we cannot carry it any longer.

"Very truly yours,
"The Walter Fisher Company."

Having begun selling the South Side Grocery Company two years before Jim Unger began giving these orders,

and having rendered all its bills to O. S. Unger, and never having called on Jim Unger to pay the account of the *South Side Grocery Company,* leads us to believe not only that Jim Unger did not hold himself out as a partner, but that the Walter Fisher Company could not have relied upon that holding out in its dealing with the South Side Grocery Company.

Before one can be held as a partner, where there is no pretense of an actual partnership, there must be some holding out by word or deed or acquiescence in the act or representation of another on the part of the party that he is a partner. The proof in this case wholly fails to show any spoken words or act connecting Jim Unger as a partner. The court below should have excluded the testimony for the plaintiff so far as this appellant is concerned, and should have given a peremptory instruction that the defendant Jim Unger was not liable as a partner of Sim Unger for this account.

Reversed and judgment here for the appellant, Jim Unger.

Reversed, and judgment here for appellant.

*Reversed.*